# In the United States Court of Federal Claims

No. 19-440C
(Filed: October 28, 2019)

|  |  |
|---|---|
| **VICTORIA SZUGGAR and KIANA BARTON, on behalf of themselves and all others similarly situated,**<br><br>              *Plaintiffs,*<br><br>    v.<br><br>**UNITED STATES,**<br><br>              *Defendant.* | Keywords: Reported Opinion, Class-Action, Motion to Dismiss, RCFC 12(b)(1), Subject-Matter Jurisdiction, Money-Mandating, Back Pay, Benefits, Temporary Appointment, 38 U.S.C. § 7405 |

*Michele R. Fisher*, Nichols Kaster, PLLP, Minneapolis, Minnesota, with whom was *Jay E. Eidsness*, for plaintiffs.

*Kara M. Westercamp*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

Plaintiffs Victoria Szuggar and Kiana Barton ("the Nurses") acting for themselves and on behalf of other similarly situated part-time registered nurses employed by the Veterans Health Administration of the Department of Veterans Affairs ("VA") filed this putative class action against the United States acting through and on behalf of the VA. The VA has moved to dismiss the complaint. The Nurses seek back pay, alleging that the statute authorizing the VA to appoint them as temporary part-time registered nurses requires the VA, after their first two years of service, to treat—and compensate—them as if they had been appointed to permanent positions.

The Court grants the VA's motion to dismiss for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. Legal Framework

For purposes of the VA's motion to dismiss, the Court accepts as true all well-pleaded allegations of the complaint. In every state, the VA employs healthcare workers, including registered nurses, in clinics that care for veterans. (Am. Compl. ¶ 4, ECF 6.) Federal

employment is generally governed by Title 5 of the United States Code, and federal employees generally have certain procedural rights to their continued employment.  Title 38 of the United States Code, however, authorizes the VA both to appoint certain healthcare employees, including registered nurses, outside of Title 5's civil-service requirements and to impose a two-year-long probationary period during which these Title-38-employees can be terminated at will.  *See* 38 U.S.C. §§ 7401(1), 7403(a)-(b).

38 U.S.C. § 7405 is among these personnel authorities specific to the VA.[1]  The section authorizes the VA to make full-time and part-time appointments on a time-limited or "temporary" basis.  A temporary employee appointed under § 7405 has no right to continued employment after the term of that appointment ends.  *See Woods v. Milner*, 955 F.2d 436, 439 (6th Cir. 1992) (temporary physicians appointed under § 7405 (formerly § 4114) and terminated at the end of their appointments had no right to permanent employment offers).  Further, "[w]hile permanent [VA] appointees have certain statutory rights incident to the review of discipline and

---

[1] Insofar as relevant, 38 U.S.C. § 7405 provides:

> **(a)** The Secretary, upon the recommendation of the Under Secretary for Health, may employ, without regard to civil service or classification laws, rules, or regulations, personnel as follows:
>
> > **(1)** On a temporary full-time basis, part-time basis, or without compensation basis, persons in the following positions:
> >
> > > **(A)** Positions listed in section 7401(3) of this title [physicians, dentists, podiatrists, chiropractors, optometrists, registered nurses, physician assistants, and expanded-function dental auxiliaries].
> >
> > * * *
>
> **(b)** Personnel employed under subsection (a)--
>
> > **(1)** shall be in addition to personnel described in section 7306, paragraphs (1) and (3) of section 7401, and section 7408 of this title; and
> >
> > **(2)** shall be paid such rates of pay as the Secretary may prescribe.
>
> * * *
>
> **(g)(1)** Except as provided in paragraph (3), employment of a registered nurse on a temporary part-time basis under subsection (a)(1) shall be for a probationary period of two years.
>
> > **(2)** Except as provided in paragraph (3), upon completion by a registered nurse of the probationary period described in paragraph (1)—
> >
> > > **(A)** the employment of such nurse shall—
> > >
> > > > **(i)** no longer be considered temporary; and
> > > >
> > > > **(ii)** be considered an appointment described in section 7403(a) of this title; and
> > >
> > > **(B)** the nurse shall be considered to have served the probationary period required by section 7403(b).
>
> * * *

termination, including peer review, temporary appointees are subject to termination at will without advance notice." *Id.* at 437.

Congress added subsection (g) to § 7405 in 2010 under the title "Prohibition on Temporary Part-Time Registered Nurse Appointments In Excess Of 2 Years." Caregivers and Veterans Omnibus Health Services Act of 2010, P.L. 111-163, sec. 601(c), May 5, 2010, 124 Stat. 1130 (2010). Subsection (g) singles out registered nurses, providing that "employment of a registered nurse on a temporary part-time basis . . . shall be for a probationary period of two years . . . ." Subsection (g) further provides that "upon completion by a registered nurse of the [two-year] probationary period . . . the employment of such nurse shall—no longer be considered temporary; and [the employment of such nurse shall] be considered an appointment described in [§] 7403(a) of this title." 38 U.S.C. § 7405(g). Section 7403 of Title 38 governs the permanent appointment of healthcare workers, including registered nurses.

**B. The Plaintiffs**

Plaintiff Victoria Szuggar was appointed in May 2012 as an "intermittent," temporary part-time registered nurse "pursuant to § 7405(a)" and has worked at VA clinics in Northern California. (Am. Compl. ¶¶ 10-13, ECF 6.) The VA has renewed her appointment annually. (Am. Compl. ¶ 12, ECF 6.) Plaintiff Kiana Barton was appointed an "intermittent" registered nurse in July 2014 and has worked in a VA facility in Maryland. (Am. Compl. ¶¶ 15-17, ECF 6.) Both have worked as temporary intermittent registered nurses for at least two years but have remained "unbenefited" employees. Am. Compl. ¶¶ 10, 14, 17, 18, ECF 6.)

**C. Amended Complaint**

The Nurses' one-count Amended Complaint alleges that the VA violated its "appointment statutes" when it "failed to convert temporary part-time [registered nurses to permanent status] according to [38 U.S.C.] § 7405(g)." (Am. Compl. ¶¶ 8-9, ECF 6.) The Amended Complaint alleges that this nationwide practice "results in significant financial harm to temporary part-time [registered nurses]" because "[e]mployees appointed under § 7405(a) do not receive certain wages and benefits . . . available to permanent [registered nurses]." The Nurses, "upon information and belief," further allege that the VA values these benefits "at over 25% of [a permanent] employee's hourly rate." (Am. Compl. ¶¶ 8-9, ECF 6.) The Amended Complaint alleges that this amount includes "pay, employer retirement contributions, paid time off, and other benefits that [permanent] employees appointed under 38 U.S.C. § 7403(a) receive." (Am. Compl. ¶¶ 9, 33, ECF 6).

The Amended Complaint seeks class certification for "[a]ll temporary, part-time [registered nurses] appointed under 38 U.S.C. § 7405(a) at any time since March 22, 2013, anywhere in the United States, who completed the two-year probationary period requirement of 38 U.S.C. § 7405(g) and were not converted to a non-temporary benefitted appointment pursuant to 38 U.S.C. § 7403(a)." (Am. Compl. ¶ 20, ECF 6.)

Further, the Amended Complaint seeks "back pay due to Plaintiffs, and all other eligible opt-in class members, *for periods of unpaid benefits and wages* from six years prior to the original complaint filing and thereafter in an amount equal to what they would have received had

they been properly converted to a permanent benefitted employee under 38 U.S.C. § 7403(a)." (Am. Compl. ¶¶ 34(a)-(b), ECF 6.)  It also seeks interest and attorneys' fees.  (Am. Compl. ¶¶ 34(c)-(d), ECF 6.)

### D. Motion to Dismiss

The VA has moved to dismiss the Nurses' Amended Complaint under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction and under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF 14.) The VA argues that this Court lacks subject matter jurisdiction because neither 38 U.S.C. § 7405(g) nor § 7403(a) is a money-mandating statute on which a plaintiff can base a claim in this court.  The VA further argues that the only statutes cited in the Amended Complaint would, even if violated, not mandate the payment of money damages because they concern appointments to certain positions at the VA, and do not contemplate pay or create a claim for money damages.

Alternatively, the VA argues that the Amended Complaint fails to state a claim upon which relief can be granted because it fails to identify any statutory or regulatory provision indicating that permanent appointees are entitled to additional pay or leave benefits that are not made available to those persons appointed on an intermittent or temporary basis.

The Nurses respond by identifying statutes and regulations related to eligibility for annual raises and benefits that they argue should be read together with the VA-appointment statutes in Title 38 to create a "fair implication" that the VA-appointment statutes are money-mandating. (*See, e.g.*, Opp'n Mot. Dismiss at 8-9, ECF 18 (citing 5 U.S.C. § 5335, applying to annual raises to permanent employees, and 5 U.S.C. §§ 8906 and 8906a applying to health-insurance premium contributions for temporary employees); Suppl. Opp'n Mot. Dismiss at 5, ECF 32 (citing 5 U.S.C. §5335, applying, in conjunction with performance standards in 5 C.F.R. § 531.404 and other regulations, to annual pay increases).)

After the government's motion was fully briefed, the Court heard oral argument and requested supplemental briefing, which has been submitted.

## II. LEGAL STANDARD

### A. Standard of Review

This Court "tests the sufficiency of the complaint as a matter of law, accepting as true all non-conclusory allegations of fact, construed in the light most favorable to the plaintiff."  *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005).  The plaintiff bears the burden of establishing this court's subject matter jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

### B. Subject Matter Jurisdiction

Plaintiffs must (1) establish a court's power to hear their case, subject matter jurisdiction; (2) establish their own right to relief from particular conduct, a cause of action; and (3) allege facts that satisfy the elements of their cause of action.  *See Greenlee Cty., Ariz. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007); *see also Davis v. Passman*, 442 U.S. 228, 239 (1979).

In this Court, the first two of these three requirements are both jurisdictional because the Tucker Act, 28 U.S.C. § 1491, has been interpreted to condition this Court's subject matter jurisdiction on plaintiffs identifying a money-mandating source of law on which to base their cause of action. *Greenlee Cty.*, 487 F.3d at 876. Most statutes do not qualify as money-mandating. *Adair v. United States*, 497 F.3d 1244, 1250 (Fed. Cir. 2007) (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)).

*United States v. Testan* specifically rejected the argument that all government violations of federal employment laws automatically give federal employees a cause of action under the Tucker Act. 424 U.S. 392, 401-02 (1976). The classification statute at issue in *Testan* had an express purpose provision providing that "the principle of equal pay for substantially equal work will be followed." *Id.* at 399. Despite this provision, the Supreme Court held that the statute at issue was not money-mandating and therefore did not give the employees a cause of action to sue in this Court's predecessor court. *Id.* at 403-04 ("They are without the remedies in the Court of Claims of retroactive classification and money damages to which they assert they are entitled. Additional remedies of this kind are for the Congress to provide and not for the courts to construct.")

"[A] statute is money-mandating only if it 'can *fairly be interpreted* as mandating compensation by the Federal Government for the damage sustained.'" *Id.* (emphasis added) (quoting *United States v. Mitchell* (*Mitchell II*), 463 U.S. 206, 217 (1983)). This "'fair interpretation' rule is satisfied when the statute is 'reasonably amenable to the reading' that it is money-mandating." *Id.* (quoting *White Mountain Apache Tribe*, 537 U.S. at 473).

### C.  Money-Mandating Statutes

To meet the requirement of suing under a money-mandating statute or regulation, plaintiffs must present a claim that may allege a violation of a statute that expressly requires payment. A claim may also meet the legal threshold even if it adds links to the interpretive chain between the provision violated and the provision requiring payment. For example, a statute authorizing a certain payment, but leaving the conditions for payment to the regulator's discretion, may be rendered mandatory and nondiscretionary when read together with its implementing regulations that define the conditions for the payment. *See, e.g., Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006). Multiple interrelated provisions may be read together to make out a money-mandating statutory "scheme." *See Sharp v. United States*, 80 Fed. Cl. 422, 427 (2008) (rejecting the government's argument that the Tucker Act's reference to a singular "Act" of Congress requires a stand-alone provision that is money-mandating).

A money-mandate may also be implied. *See Mitchell II*, 463 U.S. at 224. In *United States v. Mitchell* (*Mitchell I*), the Supreme Court reversed the Court of Claims, rejecting Indian-land allottees' breach-of-trust claim, which sought damages for the Department of Interior's mismanagement and sale of timber below market value. 445 U.S. 535, 542 (1980). The Supreme Court held that the allotment statute created a limited trust, but the statute was not sufficient to create fiduciary duties to the Indian-land allottees that could support a cause of action for money damages. *Id.* at 546. On remand, the plaintiffs argued that other statutes and regulations should be read in conjunction with the allotment statute to create fiduciary duties to the allottees. In *Mitchell II*, the Supreme Court agreed. 463 U.S. at 224 ("In contrast to the bare

trust created by the General Allotment Act, the statutes and regulations now before us clearly give the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians.  They thereby establish a fiduciary relationship and define the contours of the United States' fiduciary responsibilities.").

Despite some flexibility as to the form a money-mandating source of law may take and how direct it must be, it "must grant a right of action with specificity."  *Collins v. United States*, 67 F.3d 284, 286 (Fed. Cir. 1995) (citing *Testan*, 424 U.S. at 400).

### D. Back-Pay Claims

The Supreme Court's decision on jurisdiction in *Testan* rejected a specific kind of back-pay claim—federal employees' claims that the treatment of their actual duties under a classification statute required their appointment to a higher pay-grade and thus entitled them to back pay.  *Testan*, 424 U.S. at 402-03 ("Congress has not made available to a party wrongfully classified the remedy of money damages through retroactive classification.").  Thus, in the context of back-pay claims, *Testan* erected two hurdles.  First, consistent with the principle that employees are entitled to the benefits of their employment by statutorily authorized appointment, not by contract, *Testan* confirmed that federal employees are only entitled to pay for the position to which they were appointed, and that nothing in the Back Pay Act changes this principle. *Testan*, 424 U.S. at 406.

Second, as discussed *supra* at II.B, *Testan* held that, even under the Back Pay Act, a back-pay claim in this Court requires a source of law that mandates payment of damages or otherwise creates a cause of action for the law's violation.  Some provisions of Title 5 have qualified as money-mandating, *see, e.g.*, *Doe*, 463 F.3d at 1325, but *Testan*'s rejection of a general right of action in this Court for federal employment-law violations still stands.

Post-*Testan* back-pay cases have not always required an express money-mandate contained in a single statutory provision.  They have, however, placed limits on the length of the interpretive or causal chain that links the provision an agency allegedly violated to a provision requiring payment.  In doing so, the cases have largely rejected misclassification-back-pay claims as coming under a money-mandating provision and have required plaintiffs seeking back pay to plead a violation of a statute or regulation that specifically mentions or relates directly to payment of employees.

For example, the Federal Circuit held that a statute that "authorizes the [VA] Secretary to appoint medical personnel" but "does not mention pay . . . nor . . . create a cause of action for monetary damages . . . cannot be construed as a money-mandating statute."  *Khan v. United States*, 201 F.3d 1375, 1378 (Fed. Cir. 2000); *accord Semper v. United States*, 100 Fed. Cl. 621, 636 (2011) (statute authorizing appointment of probation officers was not money-mandating), *aff'd on other grounds*, 694 F.3d 90 (Fed. Cir. 2012); *see also Price v. United States*, 133 Fed. Cl. 128 (2017) (statute creating right to return to same or equally senior position in the United States after foreign assignment was not money-mandating); *Reeves v. United States*, 49 Fed. Cl. 560, 565 (2001) (promotion-eligibility regulation "does not mandate the payment of money damages as compensation for breach").

## III. DISCUSSION

### A. VA Temporary-Nurse Appointment Statute

For this Court to have Tucker Act jurisdiction over the Nurses' claim that the VA violated § 7405(g) by failing to recognize their permanent status after two years, § 7405(g) must mandate money either expressly or by reasonable implication.  The statute must give to the Nurses a right to payment, to the award of benefits, or to both if the Nurses are to be able to maintain an action in this Court.

Section 7405(g) is "reasonably amenable" to the reading that it requires the VA to treat temporary part-time nurses as permanent part-time nurses after two years.  It is not "reasonably amenable," however, to the reading that treating such nurses as permanent mandates money or the award of benefits.

Nothing in § 7405(g) expressly mandates the payment of money or the award of benefits to all permanent part-time nurses.  Reading all of § 7405 together with § 7403 (the only other substantive source of law cited in the Amended Complaint) does not reveal a broader statutory scheme expressly requiring payment of benefits to all permanent part-time nurses.[2]

Section 7405(g) also is not reasonably amenable to a reading that it mandates payment or benefits for all permanent nurses by implication.  Context, including the rest of § 7405, its title, and its surrounding sections, suggests that the section's purpose is to add to Title 38's appointment power the authority to make "temporary" appointments.  If "temporary" were uniquely used as a label for unbenefited employees, then § 7405(g)'s command to stop "consider[ing] temporary" the Nurses' "employment" might be sufficient to imply a mandate requiring the payment of money or award of benefits.

Nothing in §§ 7403, 7405, or the other surrounding sections, however, can reasonably be read as expressly or impliedly setting up a pay and benefits dichotomy between temporary and permanent employees.

This context suggests that "temporary" in §§ 7403 and 7405 simply means time-limited.  Section 7405(g) requires the VA to stop treating the Nurses' "employment" as time-limited after two years.  This is no small matter.  By removing the expiration date from the Nurses' appointment, § 7405(g) gives the Nurses substantial procedural rights to their continued employment unavailable to other kinds of temporary healthcare workers appointed under § 7405. *See Woods*, 955 F.2d at 437 ("While permanent [VA] appointees have certain statutory rights incident to the review of discipline and termination, including peer review, temporary appointees are subject to termination at will without advance notice.").

---

[2] The Amended Complaint also cites the Back Pay Act, 5 U.S.C. § 5596.  The Back Pay Act, however, "is merely derivative in application; it is not itself a jurisdictional statute." *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983).

**B. "Other Statutes and Regulations"**

The Nurses rely on *Mitchell II* to argue that § 7405(g)'s lack of an express money-mandate does not defeat jurisdiction because "[i]t is . . . other statutes and regulations, working in concert with the appointment statutes, that satisfy the money mandating requirement; the appointment statutes simply convert Plaintiffs' employment to a position that is eligible to receive the alleged pay and benefits." (Pl.'s Suppl. Opp'n to Mot. Dismiss 4, ECF 32.)

The Nurses' theory that a broader statutory and regulatory scheme (including § 7405(g) and other pay and benefits provisions) implies a money-mandate reflects an effort to meet the elements of *Mitchell II*, but it lacks the logic behind the holding in that case. The statutes and regulations at issue in *Mitchell II* were sufficient to create a trust relationship, the trust relationship was sufficient to create fiduciary duties to the allottees, and the fiduciary duties were sufficient to mandate compensation for the United States' sale of trust assets for less than market value.

Here, by framing their cause of action around a violation of § 7405(g), the Nurses fail to establish an inferential chain between the statute violated and the money mandated because a part-time nurse's conversion to "permanent" status is not necessarily a condition sufficient for better pay and the award of benefits. The language of the Amended Complaint describes types of pay and benefits, but not specifically enough to identify statutes or regulations mandating added pay and the award of additional benefits that permanent part-time nurses receive and temporary nurses do not.[3] The plaintiffs cite statutes and regulations that they argue exclude temporary part-time nurses from particular pay and benefits, but they stop short of pleading how those laws or other statutes mandate the award of benefits for part-time nurses on the basis of their being considered permanent as opposed to temporary pursuant to § 7405(g).[4] The Nurses' "information and belief" as to the enhanced pay and increased benefits permanent nurses receive that temporary nurses do not suggest a correlation between permanent status and the receipt of

---

[3] Precedent suggests that some provisions awarding the types of benefits the Nurses seek may be discretionary and therefore not money-mandating. *See, e.g., Duke v. Dep't of Air Force*, 230 Ct. Cl. 977, 979 (1982) (within-grade raises) ("[A] within-grade increase will be granted only where the employee's performance meets 'an acceptable level of competence, as determined by the head of the agency.' This is therefore a discretionary function."); *Berry v. United States*, 86 Fed. Cl. 750, 755 (2009). The Amended Complaint offers no basis for this Court to reach the issue of discretion (or to decide whether regulations or policies eliminate such discretion) for specific benefits provisions.

[4] This failure is jurisdictionally relevant because § 7405(g) is specific to part-time nurses and the Nurses' theory of § 7405(g)'s implied money-mandate makes the recognition of § 7405(g)'s permanent status the on-and-off switch for payment. The Court is not evaluating whether the Nurses alleged facts sufficient to show that they are within the class of temporary part-time nurses that their purported cause of action for violation of § 7405(g) would entitle to relief. That is a merits issue. *See Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007).

more pay and benefits, but this factual correlation is not a legal mandate by statute or regulation. The Amended Complaint fails to identify any such statute or regulation.

The Amended Complaint's deficiency is in the logic used to demonstrate a money-mandate, either express or implied, not a mere lack of citations or lack of specificity in its factual recitation.  "To be clear, the court does not find that an individual in [the Nurses'] position is not, pursuant to any statute, entitled to compensation. The court does hold, however, that the source of any right to compensation, and thus the foundation of this court's jurisdiction, cannot be [38 U.S.C. §7405(g)], as alleged by plaintiff[s] in this case."  *Price*, 133 Fed. Cl. at 133.

## IV. CONCLUSION

The Nurses have failed to identify a money-mandating provision creating a cause of action sufficient for this Court to assert jurisdiction under the Tucker Act.  Accordingly, this Court lacks subject matter jurisdiction to hear this case.

The court will enter a separate order GRANTING the defendant's motion to dismiss and DISMISSING the case without prejudice under RCFC 12(b)(1).[5]

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[5] Because the Court dismisses for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court does not reach the government's motion to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6).  The 12(b)(6) motion, to the extent its arguments were not in actuality jurisdictional, is dismissed as moot.